# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO. 1:19-cr-27 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| DENNIS LEE COFFMAN, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court upon the motion of defendant Dennis Lee Coffman ("Coffman") to withdraw his guilty plea. (Doc. No. 29 ["Mot."].) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 30 ["Opp'n"].) The Court held an evidentiary hearing on the motion on February 10, 2021 and, at the conclusion of the hearing, took the matter under advisement. For the following reasons, Coffman's motion is DENIED.

## I. BACKGROUND

On December 20, 2018, Coffman was named in a criminal complaint charging receipt and distribution of child pornography. (Doc. No. 1 (Complaint); Doc. No. 1-1 (Affidavit in Support).) At his arraignment the following day (December 21, 2018), Coffman was appointed a CJA certified attorney, Marcus Sidoti, to represent him. With the assistance of counsel, Coffman entered a "not guilty" plea to the charge, waived a preliminary hearing, and was ordered detained pending trial.

On January 16, 2019, an indictment issued charging Coffman with one count of receipt and distribution of visual depictions of real minors engaged in sexually explicit conduct, in

violation of 18 U.S.C. § 2252(a)(2); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (Doc. No. 7 (Indictment ["Ind."]).) Once again with the assistance of counsel, Coffman entered pleas of "not guilty" to the charges, and the matter was set for trial on March 18, 2019. (Doc. No. 8 (Trial Order).) The Court subsequently granted Coffman an extension of the final pretrial and trial dates. (*See* Non-document Order, 2/27/2019.)

On May 13, 2019, the Court granted Coffman's unopposed motion to continue the final pretrial and trial dates a second time in order to schedule the matter for a change of plea hearing. (Non-document Order, 5/13/2019; Doc. No. 11 (Motion to Continue).) On July 15, 2019, the Court conducted a change of plea hearing. At the beginning of the hearing, Coffman, who was present with Attorney Sidoti, advised the Court that he was prepared to enter a plea of "guilty" to the two counts in the indictment. (Doc. No. 26 (Transcript of the Change of Plea Hearing ["TR"]) at 96–97[1].) Coffman was placed under oath and remained under oath throughout the Court's colloquy. (*Id.* at 97.)

As an initial matter, the Court determined that Coffman was not under the influence of drugs, alcohol, and/or any chemical substance that might affect his ability to understand the proceedings. (*Id.* at 99.) The Court also confirmed that Coffman did not suffer from any mental conditions that would impact his ability to understand what was being said, and that he had received sufficient time to review and discuss with counsel the indictment and the charges contained therein. (*Id.* at 99–100.) The Court then identified the constitutional rights Coffman would be forfeiting by foregoing a trial in this matter and entering guilty pleas, and Coffman advised that he understood and agreed to give up each right. (*Id.* at 100–03.) The Court also

---

[1] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

2

reviewed with Coffman the charges in the indictment, the statutory penalties associated with those charges, the application of the sentencing guidelines and possible enhancements, and the elements of the charged offenses. As to each, Coffman stated that he understood. (*Id*. at 103–115.)

The Court then requested that the government provide a recitation of the facts. Counsel for the government proffered a statement of the facts the government was prepared to prove should this case proceed to trial:

> [F]rom on or about September 13 of 2018 through on or about December 18 of 2018, in the Northern District of Ohio, Eastern Division, and elsewhere, the defendant, Dennis Lee Coffman, did knowingly receive and distribute, using any means or facility of interstate and foreign commerce, numerous computer files, which files contained visual depictions of real minors engaged in sexually explicit conduct and which files had been shipped and transported in and affecting interstate and foreign commerce as defined in Title 18, United States Code, Section 2256(2), in violation of Title 18, United States Code, Section 2252(a)(2).
>
> Further, Your Honor, that on or about December 21, 2018 in the Northern District of Ohio, Eastern Division, the defendant, Dennis Lee Coffman, did knowingly possess an LG cellular phone that contained child pornography as defined in Title 18 of the United States Code, Section 2256(8), which child pornography had been shipped and transported in interstate and foreign commerce by any means, including by computer, and which was produced using materials which had been shipped and transported in interstate and foreign commerce by any means, including by computer, and at least one image involved a prepubescent minor or a minor who had not attained 12 years of age, in violation of Title 18 of the United States Code, Section 2252A, subsection (a)(5)(B).
>
> More specifically, that from on or about September 13, 2018 through on or about December 18 of 2018, a member of the Child Exploitation Task Force connected to the Internet via computer in an online covert capacity and signed into the BitTorrent file sharing software program.
>
> The officer searched for known hashtag values of child pornography and discovered an individual sharing child pornography utilizing IP address 76.188.9.220.
>
> The officer downloaded approximately 49 files of child pornography.

3

> Further, those files contained images and videos of real prepubescent minors or real minors who had not attained the age of 12 years engaging in oral and vaginal sex with adults, lasciviously displaying their genitals, and subjected to bondage.
>
> The files further contained sadistic and masochistic and sexual abuse of an infant or toddler.
>
> Further, investigation of the IP address revealed it was assigned to the account registered to the defendant's residence.
>
> On December 18, 2018, a search warrant was executed at the defendant's residence and an LG cellular telephone belonging to the defendant was seized during the search.
>
> A forensic examination of the devise revealed multiple files of child pornography and a BitTorrent application
>
> Further, defendant was transported to his arraignment hearing and when informed of the charges made the following statement to the officer: "Well, I am guilty of that and I can just plead guilty today. I did the crime and deserve everything that's coming."
>
> Finally, the defendant utilized his LG cellular telephone connected to the internet and received and distributed images of child pornography while located in Richland County which is located in the Northern District of Ohio, Eastern Division.

(*Id*. at 116–19.)

After Coffman was afforded an opportunity to confer with counsel, he engaged in the following exchange with the Court:

> THE COURT: "Do you acknowledge that the facts as recited by the government's attorney are facts that the government could prove in this case by proof beyond a reasonable doubt should the case proceed to trial?"
>
> THE DEFENDANT: "Yes, ma'am."
>
> \*\*\*
>
> THE COURT: "Are you fully satisfied with the legal services and advice provided to you by your attorney, sir?"

> THE DEFENDANT: "Yes, ma'am."
>
> THE COURT: "Has anyone, including the government, made any promises or assurances directly or indirectly to you to try to induce you or to try to persuade you to plead guilty in this case, sir?"
>
> THE DEFENDANT: "No, ma'am."
>
> THE COURT: "Okay. Has anyone forced you, coerced you, or threatened you in any way to get you to enter this plea, sir?"
>
> THE DEFENDANT: "No, ma'am."
>
> THE COURT: "Is your plea of guilty being made freely and voluntarily, sir?"
>
> THE DEFENDANT: "Yes, ma'am."
>
> THE COURT: "Are you pleading guilty to the offenses charged against you in the indictment because you are in fact guilty of committing those crimes, sir?"
>
> THE DEFENDANT: "Yes, ma'am."

(*Id*. at 120–21.) Following this exchange, the Court accepted Coffman's guilty plea "as knowingly, intelligently, and voluntarily made with the advice of [] counsel." (*Id*. at 122.) The Court set the matter for a sentencing hearing on November 5, 2019.

The first disclosure of Presentence Investigation Report was filed on September 24, 2019. (Doc. No. 15 ["Initial PSR"].) Coffman was interviewed in connection with the preparation of the Initial PSR on August 22, 2019 during which he acknowledged, "I viewed the child porn because meth made me a pervert." (*Id*. ¶ 13.) On October 10, 2019, Coffman, though counsel, filed an unopposed motion to continue the sentencing hearing to afford more time for the preparation of a sentencing memorandum. (Doc. No. 16.) The Court granted the motion and reset the hearing for December 5, 2019. (Non-document Order, 10/15/2019.) On October 28, 2019, Attorney Sidoti moved to withdraw as counsel for Coffman citing "irreconcilable differences."

5

(Doc. No. 17 at 75.) On November 15, 2019, the Court held a hearing on the motion and, at the hearing's conclusion, permitted Attorney Sidoti to withdraw. The Court appointed the Federal Public Defender's Office ("FPDO") to represent Coffman, and on November 18, 2019, Attorney Edward Bryan of the FPDO entered his appearance. (Minutes of Proceedings, 11/15/2019; Doc. No. 19 (Notice of Appearance).)

Between December 5, 2019 and March 30, 2020, Attorney Bryan sought and received four continuances on behalf of his client. (Doc. Nos. 21–24; *see* Non-document Orders issued on December 5, 2019, January 23, 2020, February 25, 2020, and March 30, 2020.) At a status hearing on May 28, 2020, Attorney Bryan requested and received a two-week continuance in order to prepare and file a motion to withdraw the guilty plea. (Minute Order, 5/28/2020.)

The present motion to withdraw the guilty plea was filed on June 8, 2020. In support of the motion, counsel appended the forensic report of Coffman's computer expert, Matthew Curtin, CISSP. (*See* Doc. No. 29-1 ["Defense Forensic Report"].) In the Defense Forensic Report, Curtin opined that his review and analysis of the government's evidence produced in discovery did not provide an "evidentiary connection between the government's downloads and the LG" cellular phone. (Defense Forensic Report at 150.) The Defense Forensic Report also indicated that no files identified in the government's download were found on the cellular phone, but that sexually explicit content involving prepubescent girls, as well as sexually explicit file names and a peer sharing program, were located on the phone. (*Id*. at 151–52.) According to the present motion, prior counsel was ineffective for failing to enlist a forensic expert to examine the phone, and that this failure, "as established by [Curtin's] expert report, is enough to support [Coffman's] request to withdraw his guilty plea prior to sentencing." (Mot. at 148.) Counsel

explained that the Defense Forensic Report he commissioned from Curtin "was only provided to defense counsel on May 27, 2020, less than two weeks" before the present motion was filed. (*Id.*)

At the motion hearing that followed on February 10, 2021, Curtin testified that he reviewed the extraction from Coffman's cellular phone and the log data and downloads that had been produced by the government during their investigation. He confirmed that the files that were downloaded by the government from the IP address assigned to Coffman's residence were not found on Coffman's phone but that a Bit Torrent file sharing program, as well as sexually explicit images of child pornography, was located on the phone. He also testified that he had no way of determining whether the downloaded files had previously been on the phone or whether they had been deleted.

Coffman also testified at the hearing. He stated that he met with and/or spoke with Attorney Sidoti a couple of times to discuss his case, and he asked Attorney Sidoti to review the evidence produced by the government. Coffman testified that his attorney specifically told him that the items downloaded by the government were located on his cellular phone. He claimed that Attorney Sidoti also initially advised him that he had sent all of the electronic devices to a specialist and only informed Coffman after he changed his plea that he had not enlisted the services of a computer expert. Additionally, Coffman stated that he discussed with counsel the possible defense that someone else at the residence was responsible for the material that was downloaded by the government, and that he and counsel met with the government to explore this. Coffman insists that the government used the information he provided against him.

Coffman further testified that even when he went to court to change his plea to "guilty," he still was insisting to counsel that he wanted to go to trial. At that time, Attorney Sidoti advised

that "if you care about your family, you will plead guilty." According to Coffman, counsel explained that if he went to trial he would be convicted because the jury would be comprised of jurors with young daughters that were the same age as the girls he allegedly viewed online and that they would use the arresting officer's credentials to find him guilty. With respect to the guilty plea hearing, he claims he was instructed by counsel to accept what was represented by the government, agree with whatever the judge said, and to otherwise just "keep [his] mouth shut." Counsel advised that if he plead guilty to the charges, "that at sentencing that they were going to bring all the evidence out and that's when it was going to get thrown out, because they didn't have [any] evidence against [him]." He insists that counsel explained "[t]hat's how the federal government works. [The attorney] does it at sentencing." Coffman claims that after the plea, he called Attorney Sidoti and "told him innocent people don't plead guilty." Coffman stated that, in this phone call, counsel admitted for the first time that while he had reviewed the government's evidence, he never hired an expert to examine Coffman's cellular phone.

Attorney Sidoti remembered it differently. He testified at the hearing that he met with Coffman in person four to six times and estimated he spoke with him by phone "comfortably a dozen [times] or more." He further testified that he met with an FBI agent and reviewed the forensic computer evidence on three separate occasions. He explained that he also consulted with the owner of a computer company, but after reviewing the evidence and discussing the matter with the owner, he determined that it was unnecessary to retain an expert.

He also insisted that he specifically advised Coffman that the government's downloads were not found on his phone but that there were sexually explicit images and/or videos of child pornography on his phone. Based on this and his review of the evidence, he believed it was in his

8

client's best interest to plead guilty. In addition to the physical evidence, he noted that there was evidence of certain admissions that Coffman had made at the time of his arrest, as well as other circumstantial evidence that would be used to tie Coffman to the charged offenses.[2] Rather than taking a chance and going to trial, counsel believed the better course was to proceed to sentencing where counsel could challenge the applicability of certain enhancements, argue for a downward variance, and secure for his client the benefit that is associated with acceptance of responsibility. And counsel testified that he explained all of this to Coffman and believed that Coffman understood.

Attorney Sidoti conceded that his client "had reservations from the day [he] met him about what the allegations were and what level . . . of culpability he had." He described his client as "restless" about the charges and the prospect of entering a guilty plea both before and after the change of plea hearing. Coffman's unease was not necessarily regarding his innocence but focused on his belief that he was "overcharged" and that he was "on the hook for more stuff than he actually did[.]" In counsel's experience, this was a common reaction from clients. But counsel indicated that in the end the decision to plead guilty was Coffman's and he never advised Coffman that he would get the evidence thrown out at sentencing. Still, he testified that he believed that Coffman may have regretted his decision to plead guilty and that the two even

---

[2] In addition to the fact that the downloads were associated with an IP address assigned to Coffman's residence, Attorney Sidoti made reference to circumstantial evidence relating to Coffman's wife. In its opposition brief, the government has represented that it intended to rely on a notebook seized from the residence in which Coffman's wife recorded the many problems with the couple's relationship, which included "child porn" and the fact that Coffman would not let her look at his phone. (Opp'n at 164.) Additionally, the government referenced evidence produced in discovery of internet searches performed by Coffman for child pornography websites, as well as the physical evidence of child pornography and the peer-to-peer sharing program often used for sharing child pornography that were found on the phone. (*Id.*)

9

discussed the possibility of moving to withdraw the plea before Coffman requested that Attorney Sidoti withdraw from the case.

With respect to the substantially contradictory accounts tendered by Coffman and Attorney Sidoti, the Court credits Attorney Sidoti's testimony. The Court had the opportunity to view both individuals as they offered their testimony. While the Court found Attorney Sidoti to be open and frank regarding his interactions with his former client, the Court observed that Coffman's demeanor was evasive and his self-serving accounts of his dealings with his former attorney were entirely incredible. For example, the Court finds it implausible that Attorney Sidoti, a criminal defense attorney with seventeen years of experience trying cases in the state and federal courts, advised his client to lie at the guilty plea hearing so that he could get the evidence thrown out at sentencing because "that's how it's done in the federal government." As Attorney Sidoti testified candidly at the hearing, he did not even know what such a statement could mean. For many of the same reasons, the Court does not credit Coffman's suggestion that his former attorney lied to him about getting an expert and inaccurately informed him that the government's downloaded files were found on the LG cellular phone.

## II. DISCUSSION

### A. Governing Law

"It is well settled that the withdrawal of a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district Court." *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987) (quotation marks and citations omitted). "The withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006)

(quotation marks and citations omitted). Nevertheless, "[u]nder Rule 11(d), a defendant may withdraw a guilty plea if 'the defendant can show a fair and just reason for requesting the withdrawal.'" *United States v. Catchings*, 708 F.3d 710, 717 (6th Cir. 2013) (quoting Fed. R. Crim. P. 11(d)(2)(B)). "It is the defendant's burden to demonstrate that proper grounds exist for the granting of" a motion to withdraw his guilty plea. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007).

In the Sixth Circuit, a multi-factor balancing test is employed to guide district courts in deciding whether to grant a motion to withdraw a guilty plea. The factors are:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded on other grounds as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000). No one factor controls; the list is general and nonexclusive. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). The relevance of each factor will vary according to the "circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987). Plea withdrawals should generally not be allowed where a defendant has made "a tactical decision to enter a plea, wait[ed] several weeks, and then . . . believes he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (quoting *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984)). Rather,

Rule 11(d)(2)(B) is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone. . . ." *Id*. at 1004.

### B. *Bashara* Factors

#### 1. Amount of Elapsed Time

The first factor the Court considers is the amount of time that elapsed between the guilty plea and the motion to withdraw the plea. *Bashara*, 27 F.3d at 1181. "'The shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time.'" *Ellis*, 470 F.3d at 281 (quoting *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996)). In the present case, Coffman did not have a quick change of heart, but waited 329 days—or more than 11 months—after the entry of his guilty plea before he sought to withdraw it. Even if the Court only considers the delay between the entry of the pleas and Attorney Bryan's request for additional time in which to file a motion to withdraw, 318 days elapsed, a significant period of time. The Sixth Circuit has affirmed the denial of motions to withdraw that were filed far sooner than Coffman's. *See, e.g., United States v. Simmons*, 794 F. App'x 461, 467 (6th Cir. 2019) (46 days); *United States v. Taylor*, 336 F. App'x 478, 482–83 (6th Cir. 2009) (six month delay); *United States v. Powell*, 236 F. App'x 194, 197 (6th Cir. 2007) (6 days); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55 days); *Spencer*, 836 F.2d at 239 (35 days); *see also Ellis*, 470 F.3d at 281–82 (observing that the Sixth Circuit "has denied motions to withdraw guilty pleas where the amount of time that elapsed between the guilty plea and the motion to withdraw the plea was shorter than six months") (collecting cases).

But counsel argued at the hearing that the Court should not factor into its analysis the time it took his expert to prepare the Defense Forensic Report and file the motion because Coffman had misgivings about his decision to plead almost immediately after the plea was taken and expressed these to his former counsel. There are two problems with that position. First, "the *Bashara* court . . . made clear that there is a difference between merely regretting a plea and formally moving to withdraw it." *United States v. Owens*, 215 F. App'x 498, 501 (6th Cir. 2007) (citing *Bashara*, 27 F.3d at 1181). Second, new counsel conceded at the evidentiary hearing that the Defense Forensic Report added no new information, though he maintained that the fact that the downloaded files were not found on the LG cellular phone was never "clearly and unequivocally explained to" him by the government and not fully appreciated by him until he saw the Defense Forensic Report. Yet, it is evident from the factual basis and the discovery in this case that the downloaded files—which were tied to the IP address associated with Coffman's residence—were not on the phone.[3] That new counsel did not fully appreciate the legal significance of this fact (even though Sidoti, Coffman's original counsel, was able to grasp it based upon review of the discovery provided by the government) does not justify the considerable delay caused by waiting for the Defense Forensic Report to be filed. There is no requirement that a defendant produce a fully prepared and documented defense for trial before seeking to withdraw a guilty plea and, in fact, such a requirement would be contrary to the notion that Rule 11 withdrawals are reserved for those situations where a defendant quickly moves to undo a hastily made decision. Nonetheless, even if the Court also excludes the period of time

---

[3] As Attorney Sidoti credibly testified to at the evidentiary hearing, he was aware from his review of the government's discovery alone that the downloaded files were not found on the LG cellular phone and he conveyed this information to Coffman.

13

new counsel waited for the Defense Forensic Report to be prepared, the delay still involved months. As the case law cited above make clear, such a delay is inherently unreasonable. *See also United States v. Jannuzzi*, No. 07-4521, 2009 WL 579331, at *3 (6th Cir. Mar. 9, 2009) (explaining that defendant's 30-day "period of delay is at the boundary line between what is acceptable and what is not" for purposes of the first *Bashara* factor).

The Court finds that the substantial delay in bringing the present motion weighs heavily against withdrawal.

### 2. *Valid Reason for Failing to Move to Withdraw Earlier*

For many of the same reasons, the second factor also strongly counsels against permitting a withdrawal of the guilty pleas. In his motion, Coffman suggests that Attorney Sidoti was ineffective because he failed to enlist the services of an expert witness. Again, newly appointed counsel conceded that the Defense Forensic Report added no new information then the discovery provided by the government, and former counsel (Sidoti) testified credibly that he told Coffman that the downloaded files, connected to the IP address for his residence, were not also found on his LG cellular phone. The Sixth Circuit has explained that "where a defendant is aware of the condition or reason for a plea withdrawal, at the time the guilty plea is entered, a case for withdrawal is weaker." *Spencer*, 836 F.2d at 239; *see United States v. Bowman*, 348 F.3d 408, 415 (4th Cir. 2003) ("Bowman was aware of the toxicology report before tendering his plea" and this fact weighed against allowing him to withdraw his plea.). That Coffman was aware of this fact long before the Defense Forensic Report was prepared, and in fact even before he entered his plea, is further supported by the defense he discussed and explored with former counsel and the government regarding whether another person at his residence was responsible for the

14

downloads. Further, the fact that former counsel believed that it was better for Coffman to plead guilty, gain the benefit of acceptance of responsibility, and offer sentencing arguments designed to limit his sentencing exposure is a reasonable position, given Coffman's admissions and the circumstantial evidence in the case.[4] Such strategy decisions made after fully considering the evidence fall well within the zone of discretion afforded counsel and would not support a finding of ineffective assistance of counsel. *See Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). As such, the second factor also weighs against allowing a withdrawal of the guilty pleas.

### 3. Assertion of Innocence

"Whether the movant has asserted his legal innocence is an important factor to be weighed." *Spencer*, 836 F.2d at 238. While Coffman has, from time to time, questioned the extent of his criminal liability, he has asserted his guilt as to the charged offenses on at least three separate occasions: at the time of his arrest (TR at 118 ["Well, I am guilty of that and can I just plead guilty today. I did the crime and deserve everything that's coming."]), at the change of plea hearing, and in his interview with U.S. Pretrial Services (Initial PSR ¶ 13 ["I viewed the child porn because meth made me a pervert."]). Even during the May 28, 2019 status hearing, Coffman admitted his partial guilt.[5] (*See* Doc. No. 14 (Status Hearing Transcript ["Status TR"]) at 42 ["I feel that I should plead guilty to the possession of the, the charge, but not guilty to the

---

[4] After reviewing the Defense Forensic Report at the hearing, Attorney Sidoti testified credibly that the Defense Forensic Report did not change his mind that it was in his client's best interest to plead guilty and, had he had access to the Defense Forensic Report during his representation of Coffman, he still would have recommended that Coffman plead guilty to the charges.

[5] Because, as Attorney Sidoti reported, he and Coffman had numerous conversations about Coffman's level of culpability during the months leading up to and after even the change of plea hearing, it is clear that the decision was not the result of a rash impulse but was one Coffman afforded substantial consideration. While he struggled with the realities of pleading guilty, and may now question the wisdom of his decision, the Court simply cannot find that it was a decision that was hastily made.

receipt and distribution."].) Because he admitted on the record under oath that there was a sufficient factual basis for both crimes to which he pled guilty, this factor weighs against him. *See United States v. Dixon*, 479 F.3d 431, 437 (6th Cir. 2007) (quoting *Baez*, 875 F.3d at 809) (holding that "the absence of a defendant's vigorous and repeated protestations of innocence support the denial of a motion to withdraw a guilty plea"); *Owens*, 215 F. App'x at 502 ("Although [defendant] asserted his innocence before and after his guilty plea," the third *Bashara* factor weighed against withdrawal where defendant signed a plea agreement and "testified at his plea hearing that he was entering a guilty plea because he was in fact guilty").

### 4. Circumstances Underlying the Guilty Plea

"When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *Ellis*, 470 F.3d at 280 (quotation marks and citation omitted). As the record shows, this Court fully complied with the requirements of Rule 11, making sure that Coffman understood the nature of the constitutional rights he was giving up, the nature of the charges and the statutory penalties, and the likely application of the sentencing guidelines. The Court further insured that there was a factual basis supporting the charges, and Coffman agreed with the facts and stated that he was pleading guilty because he committed the crimes. Finally, the Court confirmed that Coffman's plea was not coerced or premised on promises and that it was made after sufficient time to consult with counsel. Based on the Court's observations of Coffman and his answers to the Court's questions at the July 15, 2019 hearing, the Court made a specific finding that Coffman had tendered a knowing and voluntary plea. *See Catchings*, 708 F.3d at 718–19 (finding that the fourth factor is proved where a knowing and voluntary guilty plea was

received).

The circumstances surrounding the entry of the guilty plea strongly support a denial of Coffman's motion to withdraw his plea.

### 5. *Coffman's Nature and Background*

A defendant's intelligence, sophistication, and understanding of the plea are relevant to a court's analysis of the fifth *Bashara* factor. *See Ellis*, 470 F.3d at 285. Coffman testified that he had left high school in the twelfth grade. The Initial PSR indicates that he suffers from no mental health problems. (Initial PSR ¶ 49.) Moreover, while Coffman has previously struggled with alcohol and drug additions (*see id.* ¶ 50), he testified at the evidentiary hearing that his current incarceration has resolved many of these issues and he affirmatively stated under oath at the change of plea hearing that he was not under the influence of a medication, drugs, or other substances. (TR at 99.) Additionally, the Court had the opportunity to observe Coffman in court proceedings and, particularly with respect to the change of plea hearing, the Court found that Coffman was able to understand and appreciate the nature and gravity of the proceedings. *See Ellis*, 470 F.3d at 285 (noting that the defendant's understanding of "what he was doing and the constitutional rights he was waiving when he entered the guilty plea" weighs in favor of denying the motion to withdrawal). Still, given Coffman's past struggles with addiction and his limited education, the Court finds that this factor only slightly favors denying the motion to withdraw.

### 6. *Prior Experience with the Criminal Justice System*

The fact that a defendant has had prior contacts with the criminal justice system weighs against allowing him to withdraw his plea. *See Owens*, 215 F. App'x at 502. Here, the Initial PSR reflects that Coffman had eight prior adult criminal convictions, most of which resulted in a

17

sentence being imposed, though it is unclear as to whether any of these prior convictions were the result of guilty pleas. (Initial PSR ¶¶ 33–39.) Even though these prior offenses involved state court crimes, the Court finds that Coffman was still sufficiently familiar with the criminal justice system to appreciate the significance and ramifications of the plea process. *See United States v. Brown*, 752 F. App'x 309, 315 (6th Cir. 2018) (rejecting the defendant's argument that, because his criminal history is exclusively in the state system, this factor weighs in his favor). As was the case with the fifth factor, the Court finds that the sixth factor weighs slightly in favor of denying the motion.

### 7. Prejudice to the Government

The government does not assert any prejudice, reserving its right to advance an argument in the event the Court were to find that Coffman has established a fair and just reason for withdrawing his plea. (Opp'n at 168.) It is well settled that the government need not establish prejudice that would result from a plea withdrawal "unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal[.]" *Spencer*, 836 F.2d at 240; *see Catchings*, 708 F.3d at 717–18 (finding that the seventh factor need not be considered if the defendant "has not put forth a fair and just reason for allowing withdrawal of his plea"). Because the first six factors weigh against Coffman, he has not established a "fair and just reason" for requesting to withdraw his guilty plea, and the government need not demonstrate prejudice. Nevertheless, the Court takes notice of the fact that trial preparation would no doubt be considerably more difficult given the substantial passage of time.

### III. CONCLUSION

On balance, the *Bashara* factors weigh heavily against Coffman on his motion. The motion to withdraw his guilty pleas (Doc. No. 29) is, for the reasons set forth above, DENIED.

**IT IS SO ORDERED**.

Dated: March 31, 2021

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**